## Park Steel Company v. Staver Carriage Company.

### Gen. No. 12,080.

1. VENDOR—*when not bound to make delivery.* A contract which provides for the sale, delivery and acceptance of a minimum number of tires and likewise for the sale and delivery of a maximum number of tires, does not require the vendor to deliver such maximum number where the delivery thereof is conditioned upon their being used prior to a given date in the business of the vendee, if it appears that such maximum number was not required in the business of the vendee prior to such time, and the refusal of an entire order is proper notwithstanding part of the same might have been required in the business of the vendee.

2. GENERAL ISSUE—*effect of withdrawal of.* The effect of withdrawing the general issue in an action of assumpsit is to admit the plaintiff's claim subject to the plea or pleas remaining on file and unwithdrawn.

Action of assumpsit. Appeal from the Superior Court of Cook County; the Hon. JULIAN W. MACK, Judge, presiding. Heard in.

this court at the October term, 1904. Reversed and judgment here. Opinion filed October 16, 1905.

**Statement by the Court.** Appellant brought suit in assumpsit against appellee to recover an alleged balance of $465.30 due for tire steel sold and delivered by the former to the latter in the year 1899. Appellee filed a plea of the general issue. It also filed a plea of set-off, in which it was alleged that appellant was indebted to appellee in the sum of $2,019 damages suffered by appellee in consequence of the failure and refusal of appellant to perform a certain contract in writing entered into August 4, 1898, between appellee and Park Brother & Co., Limited, in words and figures following:

"Pittsburg, Pa., August 4, 1898.
Memorandum of sale made by Park Brother & Co., Limited.

To Staver Carriage Co. of Chicago, Ill., all the tire steel of good and suitable quality which will be used in buyer's works prior to September 1, 1899, not to exceed 14,000 sets nor to be less than 10,000 sets at the following prices and terms:

Round edge tire steel,     Terms: Cash fifteen days
3/4 x 3/16 and heavier.     from date of each invoice,
    $1.15.     less 2 discount.

Deliveries F. O. B. Pittsburg, less carload rate of freight to Auburn Park, Ill.

No freight allowed on shipments of less than 300 pounds.

To be specified: for carload shipments and in reasonable time for seller to make required deliveries, but all not later than fifteen days before the expiration of this contract;
   *    *    *"

That March 1, 1899, this contract was duly assigned by said Park Brother & Co., Limited, to appellant and the latter assumed and agreed to perform the same; that since appellant so assumed the performance of said contract, it has only partially performed the same and has failed and refused to perform the same in this, that July 6, 1899, within

a reasonable time to enable appellant to ship the same and more than fifteen days prior to the expiration of said contract, appellee ordered from and specified to appellant, in accordance with the terms of said contract, 134,600 pounds of tire steel, part and parcel of the steel mentioned in said contract; that all of said steel so ordered and specified was necessary for use in the works of appellee prior to September 1, 1899, in the conduct of its business; that appellant failed and refused to ship and deliver to appellee the steel so ordered and specified as aforesaid, although this amount, together with the amount previously furnished on said contract, did not exceed 14,000 sets, and although appellee up to that time had faithfully performed its part of said contract and was there ready, able and willing to perform the balance of said contract on its part; whereby appellee was damaged to the amount of $2,019, etc.

Upon the trial appellee withdrew the plea of the general issue, and elected to stand on its plea of set-off. The trial resulted in a verdict against appellant in the sum of $1,234.70. From the judgment entered upon this verdict the present appeal was perfected.

MUSGRAVE, VROMAN & LEE, for appellant.

BULKLEY, GRAY & MORE, for appellee.

MR. JUSTICE BALL delivered the opinion of the court.

It appears from the evidence that during the life of the contract the price of steel tires advanced so as to justify the amount of the verdict, if appellee is entitled to any recovery in this action. It also appears that between the date of the contract and August 5, 1899, appellant had delivered to appellee, on its orders and specifications, 10,600 sets of tires, the last delivery being August 5, 1899, on appellee's order and specification dated June 7, 1899. July 6, 1899, appellee ordered and specified 3,400 other sets of tires, which with those already ordered and delivered made 14,000 sets, the maximum number provided for in the contract. Appellant, under date of July 12, 1899, answered, stating that it

had applied 496 sets of previous order on the *quota* for the month of July, and would therefore accept sufficient of the order to complete the *quota* for the month of July, viz: 581 sets, and would bill the remainder at the then market price. July 13, 1899, appellee replied that this plan was not satisfactory, and demanded that the 3,400 sets be shipped to it before the end of the contract. Four days later appellant wrote stating that it could not furnish the whole number "as your contract calls for what you will actually use and does not contemplate carrying over a single set on the first of September, and from our knowledge of your consumption we are satisfied that you could not use the balance up to the maximum from this time on"; and said it would wait further advices as to how many sets appellee could actually consume until that date in excess of previous orders. Appellee's president and Wilson N. Abbott, its superintendent, admitted that had the full amount of the 14,000 sets been delivered to them, from 1,500 to 2,000 sets would have been carried over the first of September, 1899.

Under the contract appellee was bound to order from appellant and to receive from it at least 10,000 sets of tires prior to September 1, 1899; and no matter what might be its needs, it could not compel appellant during the same period to deliver to it more than 14,000 sets. Between this maximum and this minimum the number of sets which appellee had the right to demand from appellant is fixed and determined by the words, "which will be used in buyer's works prior to September 1st, 1899." These are plain words, and the court in construing the contract must give them their obvious and every day meaning. Thus read, they limit the sets of tires which appellant must furnish over and above 10,000 sets and within the maximum of 14,000 sets to the actual need of the business of appellee prior to September 1, 1899. That appellee so understood the contract is shown by the allegation in the plea of set-off, "that all and every of which said tire steel" (referring to the order for 3400 sets) "so ordered and specified was necessary for use in its" (appellee's) "works prior to September 1, 1899, in the con-

duct of its business, and would have been so used." As we have seen, this material allegation was affirmatively disproved by the president and by the superintendent of appellee.

This contract was interpreted by the Circuit Court of Appeals of the United States in Staver Carriage Co. v. Park Steel Co., 104 Fed., 200, in an action of assumpsit brought by appellee against appellant, based upon the non-performance of the contract. The declaration did not allege that the tire steel called for by this last order was needed to be used in appellee's works prior to September 1, 1899. A special demurrer, which pointed out this defect, was sustained in the Circuit Court, and that ruling was affirmed by the Court of Appeals. The opinion is instructive in its reasoning and is supported by the citation of many authorities. See, also, Manhattan Oil Co. v. Richardson, 113 Fed., 923; H. W. Williams Cooperage Co. v. Scofield, 115 Fed., 119; Allen B. Wrisley Co. v. Mathieson Alkali Works, 107 Ill. App., 379; and Cameron v. Sexton, 110 Ill. App., 381.

The plaintiff below tendered its instruction No. 3 to the court and requested that it be given to the jury as tendered. It reads:

"3. Under the terms of the contract the plaintiff is not legally obliged to deliver any more tire above the minimum quantity of ten thousand sets, than the defendant will use in its works prior to the first day of September, 1899, and is not required to deliver tire that will be held by the defendant after that date to be used by it in its works after that date."

The court, of its own motion, added the following to this instruction and gave it to the jury as thus modified, over the objection and exception of appellant: "except that if you believe from the evidence that the defendant ordinarily in the reasonable prosecution of its business carried in its bins for continuous use, then in addition to those that would be otherwise used by defendant in its works prior to September 1st, 1899, the plaintiff would be required to deliver enought to enable defendant to maintain such quantity in

its bins, but in no event must plaintiff deliver more than fourteen thousand sets in all."

The 5th and 7th instructions tendered by appellant, each of which referred to the quantity of tire appellee could reasonably use in its works prior to September 1, 1899, were severally added to by the court to conform to the modification stated in instruction No. 3.

It will be seen that the modification omits some phrase necessary to make it understandable; but waiving the effect of this defect, and reading it as referring to a certain number of sets of steel tire which appellee in the ordinary prosecution of its business carried in its bins for continuous use, it is evident that it is in conflict with the interpretation of the contract as we understand it.

It is the established law that if an order for a large number of like articles as given is in part clearly beyond or outside of the contract under which the parties are dealing, the seller is under no duty to separate the necessary from the unnecessary number, but may safely refuse the whole order. This case was tried upon a wrong theory of the law. Under the facts appellee cannot hold a recovery based upon its plea of set-off. By the withdrawal of the general issue, and proceeding to trial on that plea, the claim of appellant for the sum of $465.30 was admitted to be justly due and owing from appellee to appellant. We therefore reverse the judgment of the court below and enter judgment here against appellee and in favor of appellant for the sum of $465.30, with interest at 5 per cent. per annum from December 22, 1903, to the date of the filing of this opinion, amounting to the sum of $507.50, and costs.

*Reversed and judgment here.*