### T. W. JENKINS & CO. v. ANAHEIM SUGAR CO.

(Circuit Court of Appeals, Ninth Circuit. January 7, 1918.)

No. 3014.

1. PLEADING ⊂⇒34(3)—DEMURRER—PRESUMPTIONS.

On demurrer to a complaint seeking damages for defendant's breach of contract to furnish plaintiff sugar for its needs in August of a particular year, it will, where the complaint alleged knowledge on the part of defendant as to how plaintiff's business was conducted, be presumed that the parties made their agreement with regard to such knowledge as alleged.

2. CONTRACTS ⊂⇒10(4)—VALIDITY—ENFORCEMENT.

Plaintiff, a wholesale grocer, agreed to buy all the sugar it would require during the month of August from defendant at a fixed price, it being expressly agreed that defendant, the manufacturer, guaranteed the price up to the time of refusal against decline only to the base of price charged by the manufacturer to certain buyers. Ordinarily plaintiff required for its trade about 4,800 bags of sugar for the month of August and that fact was known to defendant. Sugar greatly increased in price, and defendant declined to furnish the amount desired. Held, that the contract was valid and not lacking mutuality, for, in view of the guaranty with respect to the base of price, it is apparent plaintiff agreed to purchase an ascertainable amount of sugar.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Benj. F. Bledsoe, Judge.

Action by T. W. Jenkins & Co., a corporation, against the Anaheim Sugar Company, a corporation. Defendant's demurrer having been sustained, and the action dismissed (237 Fed. 278), plaintiff brings error. Reversed and remanded, with directions.

This was an action upon a contract by Jenkins & Co., plaintiff below, an Oregon corporation, wholesale grocers, and engaged in buying and selling and dealing in sugar, against the Anaheim Sugar Company, a California corporation, engaged in manufacturing and refining sugar. The contract is as follows:

"San Francisco, Calif., June 13, 1914.

"A contract is hereby entered into between Anaheim Sugar Company, party of the first part, and T. W. Jenkins & Co., party of second part, to wit: Party of first part sells and party of second part buys August requirements bags fine granulated beet sugar at $4.20 per bag less 2% cash 8 days, f. o. b. San Francisco, August shipment. It being understood and agreed that party

of the first part guarantees the price up to time of refusal against decline only to the base of C. & H. and Western Sugar Refining Co."

Plaintiff alleges that the contract price was less than the prevailing market price in San Francisco when the contract was entered into, and that the price was fixed by defendant in consideration of the plaintiff's agreement with defendant that it would buy "exclusively from defendant all * * * granulated beet sugar required in its business during the month of August, 1914." It is alleged that the plaintiff relied upon the agreement, and made no other arrangements for its August requirements; that thereafter, in August, plaintiff required in its business and ordered 4,800 bags of sugar, and there was shipped and delivered from time to time during August by defendant to plaintiff 600 bags of sugar and no more; that it had many thousand customers to whom it sold sugar and merchandise and that much of its business was wholesaling to customers sugar in bag lots; that the method of dealing in sugar was this: Plaintiff would contract with a sugar producer or refiner for the sale to it, covering a specified period, of such sugar as it would require for its sale to its customers, and plaintiff would thereupon receive from and solicit from its customers orders for sugar in bag lots at a stipulated price, based on the contract price between plaintiff and the producer or refiner, delivery to be made to its customers at a future time agreed upon between the plaintiff and its customers at the time of sale, all of which was well known to the defendant when the contract herein involved was made. It is alleged that defendant in its business usually and ordinarily required in August of each year sugar in excess of 4,800 bags, and that, relying upon the contract, plaintiff solicited and received from many of its customers orders for 4,800 bags of sugar, which it intended to deliver to said customers from the sugar to be delivered under the terms of the contract; that when the contract was entered into defendant knew the nature of plaintiff's business and the manner in which it was conducted, and what plaintiff's requirements for sugar would be during the term of the contract entered into with plaintiff; that because of the refusal of defendant to deliver 4,200 bags of sugar plaintiff lost its profits on the resale thereof, and had to buy in the open market sugar in excess of the price stipulated for with defendant and was damaged in the sum of $13,020.

By demurrer these questions were presented: Does the complaint state facts sufficient to constitute a cause of action, and (2) is the complaint uncertain, ambiguous, or unintelligible? The District Court sustained the demurrer, plaintiff declined to amend, and judgment was entered, dismissing the action, whereupon plaintiff sued out writ of error.

Beach, Simon & Nelson, of Portland, Or., and Allen & Weyl, of Los Angeles, Cal., for plaintiff in error.

Gray, Barker & Bowen, of Los Angeles, Cal., for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

HUNT, Circuit Judge (after stating the facts as above). [1, 2] The District Court was of the opinion that the contract as entered into was not supported by sufficient consideration to make it valid; that it lacks mutuality, in that defendant under any circumstances could be compelled to furnish the sugar covered by the contract, but that plaintiff could not be compelled by defendant to order and accept any sugar thereunder. In support of this view the learned judge distinguishes between cases which uphold contracts binding one party to sell and the other party to buy all of the requirements of the latter's established business as to a given commodity, and those where the contract is be-

tween parties, one of whom is in the business, not of manufacturing the commodity involved, but only of selling the same at wholesale; that is to say, where the purchase and use of the commodity becomes not an incident to the principal business of the buyer, but is his main business, a contract of the general character of the one here in question will be held invalid as unilateral and void for want of mutuality.

The difference between a contract which does not obligate a buyer to take any specified quantity of the seller's product and one where in consideration of the seller's promise to sell the buyer promises to buy all the produce it may require for its own use for a definite period of time is substantial. In the one instance there would be no consideration, while in the other there would be a mutual obligation to perform which is a consideration for the promise of each. A mere option to buy is readily distinguishable from an agreement to buy all to be required. Suppose, for instance, the plaintiff herein had bought sugar from any other sugar dealer for sale to its customers during August, it must be that if loss had occurred, action in damages for breach of contract would have been sustainable, and damages could have been ascertained by extrinsic evidence. Failure in the contract to fix any requirements on the part of the Jenkins Company for August, 1914, does not seem to us to call for a nullification of the contract upon the ground of want of mutuality. The complaint charges that the contract was made with the knowledge on the part of the defendant of how plaintiff's business was conducted, and that plaintiff made contracts with customers for sale and delivery of sugar to be acquired under the contract with defendant, and knowing what the probable requirements of plaintiff would be. We think that upon demurrer the presumption is that the parties made their agreement with regard to the knowledge as alleged, and that the defendant intended to sell and deliver the quantity of sugar which the plaintiff needed for its August business.

In Minnesota Lumber Co. v. Whitebreast Coal Co., 160 Ill. 85, 43 N. E. 774, 31 L. R. A. 529, the court considered a contract wherein the "requirements" for a specified season were included, and, after treating the word "requirements" as having been used to express the needs of the parties, said:

"If the word 'requirements,' as here used, is so interpreted as to mean that appellee was only to furnish such coal as appellant should require it to furnish, then it might be said that appellant was not bound to require any coal unless it chose, and that, therefore, there was a want of mutuality in the contract. But the rule is that where the terms of a contract are susceptible of two significations, that will be adopted which gives some operation to the contract, rather than that which renders it inoperative. * * * A contract should be construed in such a way as to make the obligations imposed by its terms mutually binding upon the parties, unless such construction is wholly negatived by the language used. * * * It cannot be said that appellant was not bound by the contract. It had no right to purchase coal elsewhere for use in its business, unless, in case of a decline in the price, appellee should conclude to release it from further liability."

This decision is referred to in Cold Blast Trans. Co. v. Kansas City, etc., Co., 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696. In the latter

case the court had before it an offer to deliver an unascertained quantity of goods at a stated price and acceptance thereof, but no agreement to purchase the requirements or any portion thereof, and in a very forceful discussion, Judge Sanborn, for the court, held that such a contract was void and unenforceable because of indefiniteness and for a lack of mutuality of obligation. We do not understand, however, that the court went so far as to express the opinion that all contracts for future supply during a limited time, of articles which shall be required or needed, are invalid. Indeed, the court said:

"An accepted offer to furnish or deliver such articles of personal property as shall be needed, required or consumed by the established business of the acceptor during a limited time is binding and may be enforced, because it contains the implied agreement of the acceptor to purchase all the articles that shall be required in conducting his business during this time from the party who makes the offer." Golden Cycle Manufacturing Co. v. Rapson, etc., Co., 188 Fed. 179, 112 C. C. A. 95; Sterling Coal Co. v. Silver Springs, 162 Fed. 848, 89 C. C. A. 520.

Crane v. Crane, 105 Fed. 869, 45 C. C. A. 96, cited by the appellee in support of the position of the District Court, involved material points of difference from the case made by the complaint under examination. The contract examined in that case left the plaintiff at liberty to buy the lumber he desired elsewhere if the prices of such lumber were more favorable to him, and it did not appear from the complaint that the vendor had knowledge of the purchaser's requirements. These points of distinction are well brought out in Grand Prairie Gravel Co. v. Wills Co. (Tex. Civ. App.) 188 S. W. 680.

In Lima Locomotive & Machine Co. v. National Steel Castings Co., 155 Fed. 77, 83 C. C. A. 593, 11 L. R. A. (N. S.) 713, the Court of Appeals for the Sixth Circuit, speaking through Judge Lurton, held that where the plaintiff accepted a proposition made by defendant to furnish all deliveries as plaintiff should require for a part of the year at prices mentioned, the plaintiff was under obligation to take from the defendant all the steel castings which it required in its business, and the contract was held not void for want of mutuality. See, also, Marx v. American Malting Co., 169 Fed. 582, 95 C. C. A. 80; Manhattan Oil Co. v. Richardson, 113 Fed. 923, 51 C. C. A. 553; Ramey Lumber Co. v. Shroeder Lumber Co., 237 Fed. 39, 150 C. C. A. 241; Russell v. Excelsior, 120 Ill. App. 23; McIntyre Lumber Co. v. Jackson Lumber Co., 165 Ala. 268, 51 South. 768, 138 Am. St. Rep. 66; Consolidated Coal Co. v. Jones & Adams Co., 232 Ill. 326, 83 N. E. 851.

It does not seem that necessarily there is a substantial basis for a distinction between the needs or requirements of a wholesale dealer in sugar and a manufacturer who uses sugar. Ascertainment of the requirements of the one may be as capable of estimation as the other. The temptation to speculate may be greater on the part of the dealer than of the manufacturer, but if the contract is honestly entered into the law ought not to refuse to enforce its terms for any such reason as possible misuse of its purposes. The presumption is in favor of integrity of conduct. Furthermore, in the present case, defendant knew of probable requirements, and by the terms of the contract temptation

247 F.—61

to cut down requirements because of falling market was reduced, in that it was expressly agreed that the Anaheim Sugar Company, manufacturer, guaranteed the price up to time of refusal against decline only to the base of price charged by the manufacturer to certain buyers.

Our construction of the several averments of the complaint is that Jenkins & Co., dealer, agreed to confine its purchases to the sugar company, manufacturer; that its normal requirements were alone involved, and that they were known approximately by the manufacturing company; that there was a safeguard against inducement to eliminate requirements should prices fall, by stipulating for protection in the event of such contingency.

It follows that the court should have overruled the demurrer and required the defendant to answer.

We must reverse the judgment and remand the case, with directions to overrule the demurrer.